IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>WILLY ASDRUVAL GIL-MARTINEZ, et al.,<br><br>**Defendants.** | **CRIMINAL NO.** 13-379 (FAB) |

**MEMORANDUM AND ORDER**

BESOSA, District Judge

Before the Court are the United States' motion *in limine* and memorandum in support of jurisdiction, defendants Jesus Martinez-Gil and Wladimir José Rodriguez-Ramos's motion to dismiss,[1] and the United States' response. (Docket Nos. 36, 47, 48.) The United States requests that the Court enter a finding of law that the United States has jurisdiction over the vessel in which the defendants were arrested. Defendants Rodriguez-Ramos and Martinez-Gil seek a dismissal of all charges based on lack of jurisdiction, or, in the alternative for an evidentiary hearing on the issue of jurisdiction. For the reasons stated below, the Court **GRANTS** the United States' motion *in limine* (Docket No. 36), and **DENIES** defendants' motions to dismiss (Docket Nos. 47, 48).

---

[1]Defendant Rodriguez-Ramos joined Martinez-Gil's motions in its entirety. (Docket No. 55.)

Criminal No. 13-379 (FAB)                                                    2

Additionally, defendant Ferrison Diaz-Doncel moved, one day before the pre-trial motions deadline, for additional time to request and inspect discovery and file pre-trial motions, anticipating that he would challenge the applicability of the Maritime Drug Law Enforcement Act ("MDLEA") to this case. (Docket Nos. 49 & 56.)[2] Because the Court previously ruled — and reminded counsel — that no further extensions of time would be granted (Docket Nos. 50 & 53), and because the Court finds that jurisdiction has been conclusively established pursuant to 46 U.S.C. § 70502(d), Diaz-Doncel's motion for an extension of time to file pre-trial motions (Docket No. 56) is **DENIED**.

I.  **Background**

On July 3, 2013, the defendants were charged with violations of 46 U.S.C. §§ 70501, et seq. (possession and conspiracy to possess with the intent to distribute a controlled substance on

---

[2]Diaz-Doncel did not join Martinez-Gil's motion to dismiss. (See Docket Nos. 49, 50, 56.) Diaz-Doncel filed an opposition to the government's motion *in limine* requesting solely that the Court delay ruling on the motion until he could be heard, but did not argue the merits of the motion. (Docket No. 49.) In response, the Court reminded defense counsel that all pre-trial motions were due by October 4, 2013. (Docket No. 53.) Defendants Oscar Anibal Lugo-Alfonso and Willy Asdruval Gil-Martinez did not file responses to the government's motion *in limine*. Thus, these defendants waive "any Rule 12(b)(3) defense, objection, or request." Fed.R.Crim.P. 12(e). Defects in subject matter jurisdiction, however, are not subject to waiver and may be raised at any time. Fed.R.Crim.P. 12(b)(3)(B); United States v. Cotton, 535 U.S. 625, 630 (2002). A constitutional challenge to a statute pursuant to Article I, however, does not implicate the subject matter jurisdiction of the Court, United States v. Cardales-Luna, 632 F.3d 731, 737 (1st Cir. 2011).

Criminal No. 13-379 (FAB)                                                    3

board a vessel subject to the jurisdiction of the United States) and 18 U.S.C. §§ 2 (aiding and abetting) and 2237 (failure to heave to), collectively referred to as the Maritime Drug Law Enforcement Act ("MDLEA"). (Docket No. 1.)

The defendants were arrested on June 29, 2013 by the United States Coast Guard ("USCG") while traveling in a go-fast vessel 46 nautical miles southeast of Isla Saona, Dominican Republic. The United States contends that upon approach by the USCG, one of the defendants identified himself as the master of the vessel and claimed Venezuelan nationality for the vessel. Upon inquiry by the United States government, however, the Republic of Venezuela could neither confirm nor deny the claim that the go-fast vessel was registered in Venezuela. On September 16, 2013, Commander Salvator Fazio of the USCG, acting as the USCG Liaison Officer to the Bureau of International Narcotics and Law Enforcement Affairs, under the authority vested in him through his designation by the Secretary of State, certified that the Government of the Republic of Venezuela could neither confirm nor deny registry of the go-fast vessel.[3] (Docket No. 36-1.) Puerto Rico was the first point of entry of the defendants following their arrest.

---

[3] This certification was completed in accordance with Article 3 of the Agreement Between the Government of the United States of America and the Government of the Republic of Venezuela to Suppress Illicit Traffic in Narcotic Drugs and Psychotropic Substances by Sea. (Docket No. 36 at p. 3.)

Criminal No. 13-379 (FAB)                                                                 4

**II. Discussion**

    A.   <u>Jurisdiction and the MDLEA</u>

"Finding that drug trafficking at sea was a 'serious international problem . . . present[ing] a specific threat to the security and societal well-being of the United States,'" Congress passed the MDLEA in 1986. <u>United States v. Mitchell-Hunter</u>, 663 F.3d 45, 49 (1st Cir. 2011)(citing 46 U.S.C. § 70501); Pub. L. No. 99-570, § 3202, 100 Stat. 3207, 3202 (1986). The MDLEA makes it unlawful for an individual to "knowingly or intentionally manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance on board . . . a vessel of the United States or a vessel subject to the jurisdiction of the United States." 46 U.S.C. § 70503(a)(1). That prohibition "applies even though the act is committed outside the territorial jurisdiction of the United States." <u>Id.</u> § 70503(b); <u>United States v. Nueci-Peña</u>, 711 F.3d 191, 197 (1st Cir. 2013). "[J]urisdictional issues arising under [the MDLEA] are preliminary questions of law to be determined solely by the trial judge," and do not constitute an element of any offense. 46 U.S.C. § 70504(a).

The United States asserts jurisdiction over the go-fast vessel pursuant to 46 U.S.C. § 70502(c)(1)(A), which provides the statutory definitions of what constitutes a "vessel subject to the jurisdiction of the United States," and includes "(A) a vessel

Criminal No. 13-379 (FAB)                                                    5

without nationality." Id. § 70502(c)(1)(A). "A vessel without nationality" is defined, as relevant here, as "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality."[4] Id. § 70502(d)(1)(C). The statute specifies that a "response of a foreign nation to a claim of registry under paragraph (1)(A) or (C) . . . is proven conclusively by certification of the Secretary of State or the Secretary's designee." 46 U.S.C. § 70502(d)(2). A foreign nation's response can be equivocal or definite. Mitchell-Hunter, 663 F.3d at 50 n.6.

The defendants object to the government's assertion on two grounds, arguing for a dismissal of all counts in the indictment, or in the alternative, an evidentiary hearing on jurisdiction. The Court addresses each argument in turn.

    B.    <u>Whether a Conflict as to Basis of Jurisdiction Exists</u>

The defendants first argue that the officers who submitted the case invoked a different jurisdictional ground - "a vessel assimilated to a vessel without nationality," 46 U.S.C. §

---

[4]Section 70502(e) defines a "claim of nationality or registry" as including only: "(1) possession on board the vessel and production of documents evidencing the vessel's nationality as provided in article 5 of the 1958 Convention on the High Seas; (2) flying its nation's ensign or flag; or (3) a verbal claim of nationality or registry by the master or individual in charge of the vessel." The third definition applies to this case.

70502(c)(1)(B) - than the government asserts now. The defendants' contention is based on a checklist completed by a Coast Guard Law Enforcement Detachment Team (LEDET) that has a checkmark next to "Vessel Assimilated to Vessel Without Nationality," the option listed directly below "Vessel Without Nationality." (Docket No. 47-1.) Because two different jurisdictional grounds were claimed, the defendants contend, the certification submitted by the government is obviously flawed, and the Court cannot make a conclusive finding as to jurisdiction.

In response to this argument, the government contends that the LEDET document offered by defendants contains a "scrivenor's error," was "completed after the defendants were detained," and does not affect the government's standing to board the vessel. (Docket No. 48 at p. 4.)

"[A] vessel assimilated to a vessel without nationality" refers to a vessel that sails under the flag of two or more states, using them according to convenience. See U.N. Convention on the Law of the Sea art. 92 § 2, Dec. 10, 1982, 1833 U.N.T.S. 397. As mentioned above, the Secretary of State's certification conclusively proves a foreign nation's consent or waiver of objection "to the enforcement of United States law" over a foreign vessel. Cardales-Luna, 632 F.3d at 737.

Criminal No. 13-379 (FAB)                                                    7

    The Court agrees with the government that an error on the LEDET form does not cast doubt on the Commander's certification. The Court also notes that the form to which the defendants point as evidence of conflicting jurisdictional grounds states in two additional spaces that no flag or nationality was observed on the vessel, contradicting the contention that the vessel was boarded as a "vessel assimilated to a vessel without nationality." (See Docket No. 47-1 at p. 1.) Accordingly, the Court is not persuaded that an actual conflict as to jurisdictional basis existed regarding the go-fast vessel.

    C.   <u>The Certification Does Not Conclusively Establish Jurisdiction</u>

    The defendants further argue that Commander Fazio's certification does not conclusively establish jurisdiction so as to preclude inquiry into jurisdiction by the Court, and that an evidentiary hearing on the matter is warranted. In support of this argument, the defendants cite case law referring to MDLEA language prior to the statute's amendment in 2008 stating that a similar certification "did not rise to the level of conclusive proof." <u>United States v. Mitchell-Hunter</u>, 663 F.3d 45, 50 (1st Cir. 2011).

    Contrary to the defendants' contention, <u>Mitchell-Hunter</u> clarifies that pursuant to the MDLEA as amended, "any [foreign nation's response regarding a claim of registry], equivocal or

Criminal No. 13-379 (FAB)                                                    8

definite, [can] be conclusively proven by State Department certification for purposes of establishing jurisdiction." Id. (citing 46 U.S.C. § 70502(d)(2)). The First Circuit Court of Appeals rejected the same argument that defendants make here, holding that Congress effectively foreclosed a defendant's ability to challenge the factual underpinnings of a State Department certification when it amended the MDLEA to provide explicitly that such a certification **conclusively proves** a foreign nation's consent, waiver, or objection regarding a vessel's national registry. United States v. Cardales-Luna, 632 F.3d 731, 737 (1st Cir. 2011). "[A]ny further question about [the certification's] legitimacy is 'a question of international law that can be raised only by the foreign nation.'" Id. (quoting United States v. Bustos-Useche, 273 F.3d 622, 627 & n.5 (5th Cir. 2001)).

Accordingly, because the language of the statute as interpreted by the First Circuit Court of Appeals specifically provides that a State Department certification of a foreign nation's response provides conclusive proof that a vessel is without nationality, and because the government provided such a certification, the Court finds that jurisdiction is established pursuant to 46 U.S.C. § 70502(c)(1)(A).

Criminal No. 13-379 (FAB)                                              9

    D.    <u>The Government's Standing Argument</u>

The government argues that the defendants lack standing to challenge the defective LEDET form, which, if anything, constitutes a failure to comply with international law, and therefore can only be challenged by a foreign nation. (Docket No. 48 at p. 7.) The Court agrees with the government that further questions about the legitimacy of the certification and forms are "questions of international law that can be raised only by the foreign nation." <u>Cardales-Luna</u>, 632 F.3d at 737.

### III.    Conclusion

For the aforementioned reasons, the Court **GRANTS** the government's motion *in limine* (Docket No. 36) and **DENIES** defendants Rodríguez-Ramos' and Martinez-Gil's motions to dismiss or, in the alternative, for an evidentiary hearing on jurisdiction (Docket Nos. 47, 48). The Court finds that it has jurisdiction over the defendants pursuant to 46 U.S.C. § 70502(d). The Court also **DENIES** defendant Diaz-Doncel's motion for an extension of time (Docket No. 56).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, October 9, 2013.

                                                 s/Francisco A. Besosa
                                                 FRANCISCO A. BESOSA
                                                 UNITED STATES DISTRICT JUDGE